LAND, J.
 

 This is a suit for divorce upon the ground of adultery. Plaintiff has charged defendant with numerous and specific acts of adultery alleged to have been committed by her with Dr. Ernest J. Pollock at an assignation house on Derbigny street in the city of New Orleans on -November 3 and 7, 1922, and also at an assignation house on Royal street in said city on May 24, 28, and 29, and, at the same place, on June 4 and 11, 1923.
 

 The petition was filed in this ease on June 27,1923.
 

 As the defendant and the corespondent admit in their -testimony the existence of illicit relations between them at other times than those charged in the petition, the denial by them of the specific acts of adultery alleged, especially that of June 11, 1923, becomes the weakest kind of impeaching -testimony.
 

 Such denial, under the circumstances, is not of sufficient weight, 'in our opinion, to affect the credibility of -the testimony of plaintiff as to the act of adultery committed by defendant with Dr. Pollock at the Royal street assignation house on June 11, 1923.
 

 We must accept, therefore, as proven with sufficient legal certainty, the specific act of adultery so- charged, especially as defendant and the corespondent have been contradicted in their testimony, not only by numerous witnesses of the plaintiff, but,, as far as the corespondent is concerned, by his own testimony, given - in this case on the trial of the contempt proceedings instituted against him for obstructing -the service of the process of the civil district court upon defendant.
 

 The trial judge was not impressed with the testimony of defendant and of Dr. Pollock, offered on the trial of -the merits of this case, and evidently did not accept -the same as trustworthy. For this reason, the lower court rejected the testimony of defendant and of her paramour, as to the degrading charges preferred by them against plaintiff, of infecting his wife with a venereal disease,
 
 *481
 
 and of encouraging her to extort money from Dr. Pollock, her physician, after the illicit relations existing between them had been discovered by plaintiff. We approve the view taken by the trial judge as to the character of this testimony. It was also contended in this case that, at the time plaintiff located defendant and Dr. Pollock locked in a room in the assignation house on Royal street, plaintiff had in his possession a blank check and an unsigned written confession, and had appeared on the scene in the role of a blackmailer, with the intent to compel Dr. Pollock to sign the check and the confession, at the point of a pistol. We fail to find any evidence in the record sufficient to support this grave and debasing charge.
 

 Plaintiff had summoned a corporal of the police to the assignation house, and had requested him to raid the place, stating to the officer that Dr. Pollock was in a room with his wife, with the doors locked. The officer attempted to open the door to this room, and, having failed, refused to break the door down, and left the premises. It is true that the corporal arrested plaintiff, who had a pistol in his possession, and conducted him to the police station. Plaintiff testifies positively that he saw his wife and Dr. Pollock enter this room. Having seen his wife enter this place on a former occasion, and, having noticed that Dr. Pollock followed her shortly 'afterwards, plaintiff had rented a room there for the purpose of observation.
 

 The officer found no cheek on plaintiff after his arrest, but he did discover a paper on his person in the nature of a certificate, to be signed by witnesses who might detect his wife in a place of ill repute.
 

 A blackmailer, if sane, would not summon an officer of the law as a witness to any act of contemplated violence,' such as the extortion of money and confessions at the muzzle of a revolver.
 

 The plain purpose of plaintiff in being at this assignation house was to procure evidence, satisfactory to himself, as to the guilt of his wife.
 
 '
 

 2. It is contended by defendant that plaintiff condoned the acts of adultery charged against her as committed at the Derbigny street assignation house November 8 and 7, 1922. The testimony of plaintiff shows that, when he confronted defendant with the report of the detectives as to the Derbigny street adulteries, .she denied the same and convinced him that the charges were false. Acting in good faith, he accepted her denial as true.
 

 Without knowledge on the part of plaintiff of the wrong conduct of his wife, we fail to see in what manner her concealed faults can be'legally qondoned. If a husband does not believe that his wife is guilty when he is so informed, but yields to the deception practiced upon him by his wife, there can be no legal basis for reconciliation in such a case.
 

 On the other hand, even if the Derbigny street adulteries had been known to plaintiff and had been condoned by the subsequent reconciliation of the parties, proof of such acts may be considered as Corroborative evidence, as was done in this ease, since a new act of adultery had been committed later by defendant on June 11, 1923. R. C. C. art. 153; Williams v. Varnardo, 117 La. 905, 42 So. 419; Cass v. Cass, 34 La. Ann. 611.
 

 Judgment was rendered in the civil district court in favor of plaintiff, decreeing an absolute divorce, awarding to him the permanent care and custody of his minor child, reserving the rights' of the parties to the community of acqu§ts and gains, and ordering a partition of the property to be made in accordance with law. This judgment, in our opinion, is sustained by the law and the evidence.
 

 Judgment affirmed.